UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

SHARIF PHARMACY INC, an
Illinois corporation,

                        Plaintiff,         Case No 1:17-cv-03464

    v.

PRIME THERAPEUTICS LLC, a Delaware
Limited Liability Company,

                        Defendant.

---

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTION

The Plaintiff, SHARIF PHARMACY INC ("Pharmacy") by and through its attorney M. James Salem, seeks statutory, compensatory and punitive damages, as well as injunctive relief against Defendant PRIME THERAPEUTICS LLC ("Prime"), for antitrust laws violation, Sherman Act, 15 U.S.C. §§ 1 & 2, tortious interference with business relations, breach of contract, conversion and fraud in the inducement. Plaintiff also seeks an order enjoining Prime from terminating the Pharmacy's participation in Prime's provider network, pursuant to 15 U.S.C. § 26, while this action is pending.

## NATURE OF THE ACTION

1. Plaintiff Pharmacy is a family owned and operated business that started in 1995, by continuing to serve the community in providing affordable medicine. It is a low-income community mainly dependent on government subsidies like Medicaid and Medicare. Many of the Pharmacy's customers are elderly individuals who are within walking distance of the Pharmacy. During its 22 years of operation the Pharmacy never

had any problems with any audits from either government or private auditors, except the recent audit that has led to it being shut down this Monday, on May 15, 2017.

     2. The nearest pharmacy to the Plaintiff Pharmacy and its competitor is Walgreens, which is *not* within walking distance of the Pharmacy's customers. For the past few years, in writing and orally, Walgreens made repeated offers to purchase the Pharmacy. The offers were repeatedly rejected for a number of reasons, two of which are: 1) six families' livelihood that depend on the Pharmacy, and 2) many of the elderly and infirm customers, who suffer from chronic physical and mental illnesses, would not be able to walk to get their medicine.

     3. On December 4, 2014, Plaintiff Pharmacy entered into a contract with Defendant Prime, a private company that serves as claims processor and auditor for Medicaid and Medicare, as well as Blue Cross and Blue Shields, **Exhibit A**. In 2016, Prime conducted an eight (8) month audit of the Pharmacy where for the first time in 22 years a discrepancy was allegedly found.

     4. Initially, Prime sent a letter, dated December 2, 2016, to the Pharmacy telling it that as a result of the audit, it owed $25,914.79. The Pharmacy objected to this determination and appealed it. However, within 11 days Prime denied the appeal, without giving the Pharmacy an opportunity to conduct their own audit or to ensure that the information that Prime received from the Pharmacy's suppliers was accurate. Rather than incur more attorney's fees and fees for conducting an audit, which will cost more than $25,914.79, the Pharmacy agreed to pay the money, but in doing so it explicitly stated in writing that it does not admit to liability.

5. On August 29, 2016, Prime entered into a "partnership" with Walgreens to "help it capture a greater share of the prescription-drug market and better compete with CVS Health Inc.," see **Exhibit B**. Shutting down the Plaintiff Pharmacy in this case will provide a greater share of the prescription-drug market. On February 7, 2017, Prime sent a letter to the Pharmacy terminating its contract as of May 15, 2017, which is in effect shutting down the Pharmacy. 75% of the Pharmacy's customers are using Medicaid, Medicare or Blue Cross and Blue Shields.

6. **Exhibit C** is Prime's website showing that it is a Pharmacy, and **Exhibit D** is a Better Business Review, with Complaints about Prime that reveals Prime "is a mail order pharmacy that opened in April of 2004. The BBB has reviewed complaints against the company involving problems and billing issues." See first page of **Exhibit D**. **Exhibit E** shows Prime's ownership interest with Walgreens in "a combined central specialty pharmacy and mail services company," that directly competes with Plaintiff. Thus, not only does Prime's partner Walgreens compete directly with Plaintiff, but also Prime itself competes by being a mail order pharmacy, selling prescription-drugs through the mail, and by ownership in a joint venture with Walgreens, see **Exhibit E**.

7. On March 6, 2017, Prime sent a letter to the Pharmacy retracting its December 2, 2016, letter in which it indicated that the result of the audit was only a $25,914.79 payment overdue, **Exhibit F**. Prime stated: "On December 2, 2016, Prime sent you a notice incorrectly indicating that $25,914.79 was overdue as a result of a recent audit. This letter corrects that error."

8. Whether it was an error by Prime will eventually be determined, but the May 15, 2017, termination date should be postponed until such a determination is made. Otherwise, irreparable harm to the Pharmacy's customers and the six families whose livelihood depend on the Pharmacy will result. The Plaintiff Pharmacy's accompanying motion for temporary restraining order and a preliminary injunction seeks to prevent Prime from terminating the Pharmacy's participation in Prime's Provider Network, which will keep the Pharmacy open while this action is pending to prevent irreparable harm to the health and well-being of not only the customers, as shown in their Affidavits **Exhibit G**, but also many other members of the community who are too physically or mentally weak to walk to Walgreens for their medicine, and the loss of the livelihood of six families mentioned below.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction over the subject matter of this action under. Plaintiff bring this action, under 15 U.S.C. §§ 15, 26, for Prime's violation of the Sherman Act, 15 U.S.C. § 1 & 2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1337 (commerce and antitrust regulation).

10. This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are of diverse citizenship and the amount in controversy is over $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all state law claims. Venue in the Northern District of Illinois is based on Plaintiff's state of incorporation and where both the Plaintiff and Defendant are doing business, under 28 U.S.C. § 1391.

## THE PARTIES

11. Plaintiff Pharmacy is an Illinois corporation, with its principal place of business in Chicago, Illinois. It is a retail business that sales prescription drugs in Illinois.

12. Defendant Prime is a Delaware company with its principal place of business in Eagan, Minnesota. Prime is owned by 13 Blue Cross Blue Shield companies, none of which are incorporated in Illinois, and provides services to more than 26 million people nationwide.

## STATEMENT OF FACTS

13. The Plaintiff Pharmacy is a family owned and operated business that started in 1994, by continuing to serve the community in providing affordable prescription drugs. It is a low-income community mainly dependent on government subsidies like Medicaid and Medicare.

14. The Defendant Prime is a private and independent pharmacy benefit management ("PBM") company that manages coverage for medicine to health insurers. It processes the insurance claims of the Plaintiff Pharmacy and submits them to Medicaid, Medicare and Blue Cross and Blue Shield.

15. On December 4, 2014, Plaintiff Pharmacy entered into a contract with Defendant Prime, **Exhibit A**, to process its claims and to serve as an auditor for Medicaid and Medicare, as well as Blue Cross and Blue Shields, and 75% of the Pharmacy's customers are using Medicaid, Medicare or Blue Cross and Blue Shields.

16. Prime is also in "partnership" with Walgreens to "help it capture a greater share of the prescription-drug market and better compete with CVS Health Inc.," see **Exhibit B.** Prime "is a mail order pharmacy," and in a joint venture with Walgreens in the prescription-drug market, which is in direct competition with Plaintiff, see **Exhibits D & E**.

17. Prime sent a letter, dated 10/03/2016, to the Pharmacists in Charge ("PIC") Richard Sharif, in which Prime indicated that an audit was commenced in March 2016 and completed October 2016. Prime conducted an eight (8) month audit of the Pharmacy where for the first time in the Pharmacy's 22 years of operation, a discrepancy was found.

18. Prime then sent another letter, dated December 2, 2016, to the PIC telling him that the audit shows the Pharmacy owes $25,914.79. The Pharmacy objected to this determination and appealed it. However, within 11 days Prime denied the appeal, without giving the Pharmacy an opportunity to conduct their own audit or to ensure that the information Prime received from the Pharmacy's suppliers was accurate.

19. Throughout the entire audit and appeal process Prime failed to respond to or cooperate with the Pharmacy's counsel, William Coughlin. Multiple telephone calls, letters and emails went unanswered, **Exhibit H**, to the frustration of Mr. Coughlin, who withdrew his representation of the Pharmacy as a result of Prime's lack of response and cooperation.

20. Rather than incur more attorney's fees and perform its own audit, which would have cost more than $25,000.00, the Pharmacy agreed to pay the money, but in doing so it explicitly stated in writing that it does *not admit to liability*.

21. Prime took eight months to do its audit, but gave the Pharmacy only 11 days to do its audit and produce supporting documentation for each prescription. The Pharmacy protested to Prime that this time frame is in breach of Section 19 of the Prime Therapeutics LLC, Pharmacy Participation Agreement, Amended October 2014 ("the Agreement"), **Exhibit A**, which requires a "time frame prescribed by Prime." Since Prime took eight months, as the time frame for its audit, it cannot reasonably prescribe an 11-day time frame for the Pharmacy to do the same audit.

22. The Pharmacy relied on Prime's omissions of not terminating it and the appeal being partially granted, which were false and fraudulent representations, and decided to make the $25,914.79 payment, rather than obtain counsel and go through a lengthy audit process that with counsel's fees will exceed $25,000. However, had the Pharmacy been told the truth in Prime's December 2, 2016 letter, in that the appeal was not "partially granted," and that it will be terminated, then it would have invested in an expensive audit and attorney's fees to show that the audit was incorrect.

23. Prime's December 2, 2016, letter was intentionally misleading for two reasons. First, it implied that the amount in counsel's letter to reduce the audit overdue amount was correct. In that, all the Pharmacy had to pay was $25,914.79 as a result of the audit. Second, the omissions of the Pharmacy's termination and that the appeal was not partially granted, as a result of the audit, were intentionally withheld in order to first obtain payment from the Pharmacy and thereby having the Pharmacy accept liability. This would justify the termination of the Pharmacy. These omissions constitute false and fraudulent conduct on behalf of Prime.

24. Prime never disclosed the specific deficiencies found in the audit prior to denying the appeal. Nonetheless, the Pharmacy has since obtained each and every written prescription for the prescription-drugs it sold.

25. The Pharmacy's prior counsel produced emails showing that Prime agents failed to respond or provide explanations or cooperate with counsel during the appeal, **Exhibit H**. Prime never gave the Pharmacy full disclosure of the findings in its audit. This constitutes a breach of the Agreement, since Prime is expected to cooperate with the Pharmacy in good faith to meet the terms and conditions of the Agreement.

26. Ultimately, Prime wrongfully took $51, 824.91 from the insurance claims the Pharmacy submitted without the Pharmacy's consent. Prime took this money on the basis of its own unilateral determination that the Pharmacy breached the contract and that its audit was accurate. However, there was no court ruling of a breach of contract and there was no legal basis cited by Prime to permit it to seize the Pharmacy's money. As a matter of law, Prime did not have the legal authority to simply take $51, 824.91 that belongs to the Pharmacy based on its interpretation of the Agreement. Prime wrongfully took this money, which is a significant amount that would typically shut down a small pharmacy like the Plaintiff, in an effort to shut down the Pharmacy without the need to terminate it from Prime's provider network.

27. The Pharmacy never admitted to any wrongdoing and never consented to allowing Prime to take any money belonging to the Pharmacy. It is for the courts to interpret and enforce contracts and not Prime. Whether a contract is legally enforceable and whether it was breached is not for private party on its own to determine. Prime committed conversion, as well as the fraud in taking the $51,824.91 from the Plaintiff Pharmacy.

8

28. Prime breached the Agreement **Exhibit A** for all the reasons stated above, it committed a false and fraudulent act, in the inducement, in its December 2, 2016 letter, **Exhibit F**. Prime's attempt to terminate the Pharmacy for its own benefit and for the benefit of its partnership with Walgreens, which Prime has interest in and may have colluded with, to reduce competition and increase its prescription-drug market share.

29. The PIC Richard Sharif and counsel for Plaintiff spoke directly with a major supplier of prescription-drugs to pharmacies, who indicated that Prime never terminates big-chain pharmacies like Walgreen and CVS. He said Prime only terminates small independent pharmacies who are unable to defend themselves, but never Walgreens or CVS. Upon information and belief, Prime has terminated other pharmacies in the Chicago area to increase its and Walgreens' prescription-drug market share.

## ANTITRUST ALLEGATIONS

30. Defendants Prime engaged in a concerted effort to unreasonably restrain trade and competition in violation of the Sherman Act, 15 U.S.C. § 1 & 2, *et seq.*, under the rule of reason, or any intermediate standard, Prime's conduct is a transparently unreasonable and an unlawful restraint of trade and competition.

## INTERSTATE COMMERCE

31. The provision and sale of many of the pharmaceutical services and products, and coverage for such services and products under group and individual health plans related to Plaintiff and its suppliers, are each in, and affect, interstate commerce. Many of the activities of the Parties, in administering and processing the prescription drug benefits for customers and health plans in every state are in the regular, continuous, and substantial flow of interstate commerce, and have a substantial effect upon interstate commerce.

**DAMAGES**

32. Defendant Prime has caused damages by causing letters to go out to customers to change their Pharmacy. The fact that many customers have not done so in the past two months is evidence of their inability to walk to Walgreens or travel to any other pharmacy. See attached hereto as **Exhibit G**, Affidavits of 13 of the customers who cannot change pharmacy and who will suffer both physically and mentally if Prime is not enjoined from terminating the Pharmacy's participation in Prime's provider network. In addition, six (6) families will lose their livelihood, which include the families of the following employees and Pharmacists: 1) Haifa Kaj with four children, 2) Pharmacist M. Hussein with three children, 3) Pharmacist Riham Elzaeim with two children, 4) Pharmacist Ali Akhras with four children, 5) Pharmacist in Charge Richard Sharif with four children, and 6) Supervisor Yesenia Rojas with four children. The Plaintiff Pharmacy will lose the fair market value of its business, which Walgreens was willing to pay.

33. Whether Prime is committing these wrongful acts on its own or in collusion with Walgreens is not known at this time. If in discovery evidence shows Walgreen and Prime colluded, then Walgreen will be joined as a Defendant.

**FIRST CAUSE OF ACTION**
**ANTITRUST VIOLATION, Sherman Act 15 U.S.C. § 1 & 2**

34. Plaintiff repeats paragraphs 1 through 33 as stated herein.

35. Defendant Prime engaged in unlawful conduct by restraining trade and interstate commerce in violation of the Sherman Act, 15 U.S.C. § 1 & 2.

36. Prime will wrongfully terminated Plaintiff Pharmacy's participation in Prime's provider network to help the nearby pharmacy Walgreens "capture a greater

share of the prescription-drug market and better compete with CVS Health Inc.," **Exhibit B**.

37. In addition, Prime is a direct competitor with Plaintiff in that it is a mail order pharmacy, selling prescription-drugs through the mail, and by ownership in a joint venture with Walgreens, **Exhibit C, D & E**.

38. The termination will be unjustified, in breach of contractual obligation, and a pretext to increase Prime's and its partner Walgreens' share of prescription-drug market, and increase its own share of the prescription-drug market by owning a joint venture pharmacy with Walgreens and having a mail order service. This results in anticompetitive and antitrust injury to Plaintiff and also a violation of the Sherman Act, 15 U.S.C. § 1 & 2, under a quick-look and rule of reason standard. This termination results in reduced trade and competition.

## SECOND CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

39. Plaintiff repeats paragraphs 1 through 33 as stated herein.

40. Defendant Prime caused a direct contact with Plaintiff's customers to notify them that they must purchase their medicine from a new Pharmacy as of May 15, 2017.

41. Prime also contacted Medicaid, Medicare and Blue Cross and Blue Shield causing a termination of business relations with Plaintiff as of May 15, 2017.

42. Plaintiff has a reasonable expectancy of a valid business relationship with its customers, **Exhibit G**, and the third parties, Medicaid, Medicare and Blue Cross and Blue Shield.

43. Defendant Prime knew of the business relationship Plaintiff has with its customers and said third parties, as well as the prospective business relationship.

11

44. Defendant Prime intentionally interfered with the Plaintiff's current and prospective business relationship by causing a contact with Plaintiff's customers and planned termination of Plaintiff's participation in the Prime Provider Network, where this was the interference that caused damages to the Plaintiff.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT

45. Plaintiff repeats paragraphs 1 through 33 as stated herein.

46. Plaintiff and the Defendant entered into a contract shown as **Exhibit A**.

47. Defendant breached said contract by conducting a false audit as a pretext to increase the prescription-drug market share of itself and its partner Walgreens.

48. Defendant also beached said contract by 1) failing to permit Plaintiff time to properly appeal its determination, 2) by failing to respond to or cooperate with the Pharmacy's counsel, William Coughlin, during the auditing process and appeal, 3) omissions in Defendant's December 2, 2016 letter that constitute fraud, 4) by planned termination Plaintiff's participation in the Prime's Provider Network as a pretext to increasing market share of Prime's and Walgreens' prescription-drug market.

49. As a result of the breach Plaintiff was damaged as shown in the Damage's Section above and in the Relief Requested Section below.

### FOURTH CAUSE OF ACTION
### CONVERSION

50. Plaintiff repeats paragraphs 1 through 33 as stated herein.

51. Defendant Prime wrongfully took $51, 824.91 from Plaintiff's insurance claims without the Plaintiff's consent. This money belongs to Plaintiff for the prescription-drugs it sold.

52. Prime took this money on the basis of its own unilateral determination that the Pharmacy breached a contract and that its audit of overdue money was accurate.

53. There was no court ruling of a breach of contract and there was no legal basis cited by Prime to took possession of the Plaintiff's money. Thus, it was taken via by conversion.

54. Plaintiff demanded a return of its money by telephone and in writing through counsel, but Prime refused.

## FIFTH CAUSE OF ACTION
## FRAUD BY INDUCEMENT

55. Plaintiff repeats paragraphs 1 through 33 as stated herein.

56. Prime's December 2, 2016, letter constituted fraud by inducement, **Exhibit F**. In that, it intentionally misled Plaintiff by implying that the Pharmacy had to only pay $25,914.79 as a result of the audit.

57. Prime's omission in said letter, in that, Prime omitted the fact the Pharmacy will be terminated from its provider network and omitted that the Pharmacy owed more than the twenty-five thousand, was intentional in order to first obtain payment from the Pharmacy, and thereby having the Pharmacy accept liability, which would justify the termination of the Pharmacy. It would also ensure that it would be cost-effective to pay the twenty-five thousand rather than do an audit and retain counsel.

58. These omissions constitute false and fraudulent conduct by Prime to induce the Pharmacy to pay the $25,914.79, admit to the liability and to justify termination.

59. The Pharmacy relied on these omissions from the December 2, 2016 letter, **Exhibit F**, and agreed to pay the $25,914.79, but it also denied any liability.

60. As a result of this reliance, the Pharmacy 1) refrained from performing an audit, 2) refrained from retaining counsel and 3) agreed to pay the $25,914.79. On the basis of the overdue amount resulting from the audit, the Pharmacy's participation in Prime's Provider Network was terminated. Thus, shutting down Plaintiff's entire business that mainly deals with Prime's Provider Network.

## SIXTH CAUSE OF ACTION
## DECLARATORY and INJUNCTIVE RELIEF

61. Plaintiff repeats paragraphs 1 through 33 as stated herein.

62. Plaintiff has sustained, and will continue to sustain, irreparable injuries caused by Prime's conduct set forth herein.

63. Plaintiffs have no adequate remedy at law for the injuries and damages proximately caused by the conduct of terminating Plaintiff. In that, it would be too speculative to determine the profits made by Prime itself in a joint venture and in its partnership with Walgreens from shutting down Plaintiff's business. Determining lose or profits in a competitive business has been established as too speculative where no adequate remedy at law exists.

64. Plaintiff is likely to succeed on the merits of its claim against Prime. Plaintiff is, therefore, entitled to a preliminary and permanent injunction, pursuant to 15 U.S.C. § 26, and as set forth in the request for relief below and in the accompanying motion for preliminary injunction.

## REQUEST FOR RELIEF

65. **WHEREFORE,** Plaintiff prays for the following relief:

14

a) that the injunctive relief be granted by enjoining the Defendant Prime from terminating the Plaintiff Pharmacy from participation in the Prime's Provider Network, pursuant to 15 U.S.C. § 26;

b) awarding compensatory damages in the amount determined at trial;

c) awarding three (3) times actual damages and statutory damages against Prime in violation of: 15 U.S.C. § 1 & 2;

d) awarding Plaintiff punitive damages in an amount this Court believes will deter Prime and others in Defendant's situation from committing such acts;

e) an order awarding reasonable attorney's fees, costs, and 5% statutory pre-judgment interest; (in any action under 15 U.S.C. § 1, in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff, pursuant to 15 U.S.C. § 15);

f) together with such other and further relief this Court deems just and proper.

**JURY TRIAL IS REQUESTED**

Dated: May 9**,** 2017

Respectfully submitted,

/s/M James Salem,
Attorney for Plaintiff
7156 West 127th Street, B-149
Palos Heights, IL. 60463
Tel. (708) 277-4775
Fax (708) 448-4515
salemlaw@comcast.net